# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JASON J. GAINER,

      Defendant Below,
      Appellant.

v.

STATE OF DELAWARE,

      Plaintiff Below,
      Appellee.

:   Def. ID# 1805014537

Submitted: June 19, 2019
Decided: July 9, 2019

## ORDER

After consideration of the no-merit brief and motion to withdraw filed by appellant's counsel,[1] the State's response, and the Superior Court record, it appears to the Court that:

1) On October 10, 2018, a Court of Common Pleas ("CCP") jury found Jason J. Gainer ("appellant") guilty of criminal contempt of a Protection from Abuse ("PFA") order and resisting arrest. The presiding Judge sentenced him on the resisting arrest conviction to 1 year at Level 5, with credit for 37 days served, and the balance suspended for 9 months of Level 3 probation, and on the criminal contempt of a PFA conviction to 1 year at Level 5 suspended for 9 months of probation at Level 3. The probations are to run concurrently.

2) The evidence presented at the trial established the following.

---

[1] No civil or criminal rule of Superior Court directs the procedure to be followed in this situation. Consequently, pursuant to Superior Court Criminal Rule 57(d), this court employs Supreme Court Rule 26 to address the pending appeal.

1

On April 26, 2018, Family Court issued a PFA against appellant on behalf of his minor child, Mary Jones.[2] The order prevented him from having contact with Mary except as permitted by a Family Court visitation/custody order. Appellant was present in the courtroom when Family Court entered that order; thus, he had actual notice of that condition.

Mary, who was nine-years-old at the time of the trial, testified to the following. On May 22, 2018, she was at her daycare. She, her friend, and her friend's brother went outside to play "fake recess."[3] She saw her father while she was outside and she "heard something from his voice."[4] She thinks it was like, "I love you, Mary."[5] Her friend told Mary that her father called Mary to come over but Mary did not think he would have said that. She knows he said something. She then ran inside.

One of the arresting officers testified at trial. He testified to the following.

The police were called regarding a violation of the PFA. They obtained the PFA Order from Tracy Jones, Mary's mother and appellant's ex-wife. The police also determined by a computer search that the PFA remained active. The police went to appellant's residence and were informed he was at his parents' residence down the road. Four policemen, riding in two marked vehicles, pulled into the driveway adjacent to the parents' residence. Two of the officers were in their issued uniforms; another two were in plainclothes and wearing vests marked "STATE POLICE" in big yellow letters. The police saw appellant outside, in back of his parents' house.

---

[2]Pseudonyms are used for the child and the mother's names.

[3]Transcript of October 10, 2018 Proceedings at 58 ("Trans. at __").

[4]Trans. at 59, 61.

[5]*Id.*

They started to walk towards appellant; he turned and ran. They identified themselves as "State Police" and commanded him to stop running. They chased him a good ways, maybe half a mile, before he gave up.

After being given his *Miranda*[6] warnings, appellant admitted he had walked past Mary's daycare and shouted out to her, "I love you Mary."[7] He admitted he ran because they were the police.

Appellant testified to the following at the trial. He and Tracy Jones had marital problems and at times, each of them had PFAs against the other. Appellant happened to be walking past Mary Jones' daycare. He was not really certain she was at that daycare. However, when he saw her outside, he was happy to see her and he said, "I love you Mary."[8] He maintained that he did not yell it; he blurted it out.

He admitted he ran from the police.

The jury found appellant guilty of the counts of criminal contempt of a domestic violence protective order and resisting arrest.

3) On appeal, appellant's attorney ("Counsel") filed a brief and a motion to withdraw. He concluded the appeal is wholly without merit based upon a conscientious examination of the record and the law. Counsel provided appellant with the opportunity to submit issues he wished the Court to consider. Appellant provided statements on a copy of the trial transcript and these

---

[6]*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[7]Trans. at 38.

[8]Trans. at 91.

3

annotations and/or statements were attached as Exhibit B to Counsel's Brief on appeal. The substance of these submissions is discussed in paragraph 6 below.

4) The State of Delaware ("the State") argues the appeal is meritless. It argues Appellant's annotations and/or statements do not set forth any ground for relief, and the evidence at trial, which included appellant's admissions of violating the PFA and resisting arrest, was overwhelming. Thus, the State urges the Court to affirm the judgment below.

5) The standard of review of an appeal from CCP is as follows:

The Superior Court is authorized to consider appeals from the Court of Common Pleas in criminal matters. When addressing appeals from the Court of Common Pleas, the Superior Court acts as an intermediate appellate court, with the same function as that of the Supreme Court. In considering an appeal from the Court of Common Pleas to the Superior Court, the Superior Court determines whether there is legal error and whether the factual findings made by the trial judge are sufficiently supported by the record. Factual findings by the Court of Common Pleas are given deference and are reviewed for clear error. Legal questions are reviewed *de novo* (footnotes and citations omitted).[9]

When reviewing a motion to withdraw and an accompanying brief, this Court employs the standard that the Supreme Court employs in Rule 26:

[T]his Court must: (i) be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable issues on appeal; and (ii) conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation (footnote and citations omitted).[10]

6) I set forth below and consider the annotations/statements/comments appellant has made on various pages of the trial transcript.

---

[9] *Slaney v. State*, 2016 WL 5946485, *3 (Del. Super. Oct. 7, 2016).

[10] *Young v. State*, 2019 WL 2205904, * 1 (Del. May 21, 2019).

## A) Comments, not arguments.

The following statements are not arguments; they merely are comments.

On page 31, appellant notes he reported Troop 5 (the Troop to which the arresting officers were assigned) to Internal Affairs.

On page 36, where the police officer testified the officers did not see the house number for his parents' house, appellant comments that the numbers are on the mailbox.

On page 39, he is questioned about what appellant told the police about running and he comments that he told them about the Family Court proceedings and his ex-wife was lying.

On page 79, he circles the word "theories" and writes the word "statistic's [sic]" in the margin.

On page 89, he adds a comment that seems to indicate that he considers CCP to be socially corrupt.

## B) Appellant's post-trial attempt to testify.

The following statements appear to be an attempt by appellant to present a modified version of the evidence. None of these statements may be considered because the Court does not consider information that was not a part of the record before the trial court.[11]

On page 38, appellant states he noticed that his ex-wife had not picked up Mary yet so he turned around and walked back home; the day care is within 100 yards of his home.

On page 47, Tracy Jones reads into the record the conditions of the PFA, which are:

> He is not to threaten, molest, attack, harass, or commit any other acts of abuse
> against Mary or any other child living in my residence because I do have another

---

[11]*State v. Hicks*, 2019 WL 2152707 (Del. Super. May 15, 2019); *State v. Lee*, 1998 WL 733068, * 1 (Del. Super. Aug. 4, 1998); *State v. Small*, 1992 WL 114068, *1 (Del. Super. Apr. 27, 1992).

child. He is not allowed to be within 100 yards from Mary, her school, or her workplace.

Appellant comments that he never has been to Tracy Jones' house and he never has abused their daughter.

On page 50, he clarifies the date of his divorce from Tracy Jones. Also on that page, he states that he did not drop a PFA he had against Tracy Jones and that she agreed to go to counseling for various mental health issues.

On page 85, he adds facts to his testimony.

**C) Arguments.**

Set forth below is a list of annotations/statements which appellant has inserted on the trial transcripts. The Court will consider them as arguments appellant is making on appeal. I clarify that none of these "arguments" were made at the trial.

On page 38, appellant claims he asked for an attorney when the police were questioning him but they continued to question him. That claim was waived when a motion to suppress was not filed.

On page 52, he states that he believes Tracy Jones told Mary what to say during a trial recess. No basis for that statement exists. The fact that Tracy Jones told Mary she did not have to testify does not support any argument Tracy Jones coached Mary, as appellant asserts on page 63. It is noteworthy that Mary's testimony corresponds directly to appellant's testimony, making this argument of no effect.

On page 65, appellant asserts he was questioned while the jury was out of the courtroom. He was. The Court asked if he understood he had the right not to testify. That colloquy must be conducted outside the presence of the jury. The procedure used was to protect appellant's

6

Constitutional rights. The attorneys and the Court also reviewed with him a document he took to the stand with him. The relevance of that document and whether it was admissible had to be determined out of the presence of the jury in order to prevent error.

On page 97, the prosecutor, in her argument, stated that the Trooper said appellant admitted he yelled, "I love you, Mary." Appellant comments that he did not yell, and asserts that the police report indicated Mary said she did not hear anything. The police report was not in the record. The evidence admitted at trial was that Mary "heard something from his voice."[12] Appellant also testified he said he loved her. Appellant's statement, no matter the volume, was directed to Mary and consequently, the evidence supports he was in violation of the no contact order.

On page 98, appellant comments that the police officer's testimony did not match the police officer's police report. He does not specify what the inconsistency is. The police report was not entered into evidence. If there was a difference between the report and the testimony, the differences could have been pointed out during the trial. This attempt to attack the officer's credibility comes too late.

On page 11, appellant comments the jury did not look at the police report or the evidence. He has no basis for making that argument. On that same page, he also comments that the Court of Common Pleas would not allow him to testify about the statistics on parental alienation or emotional extortion. Appellant attempted to get this information into evidence as is reflected on page 78. The Court ruled, at pages 79-80, that the information was not relevant. There was no

---

[12]Trans. at 59, 61.

error in that ruling. Delaware Rule of Evidence 401 requires evidence to make a fact in issue more or less probable. The offered evidence had no bearing on any of the issues in the case.

On page 115, appellant comments the jury said he was not guilty of resisting arrest. That is a meritless assertion. The transcript shows he was found guilty on both counts. The Clerk's work sheet shows he was found guilty on both counts. CCP sentenced him at that time on both counts. The verdict was guilty on both counts.

In conclusion, none of appellant's annotations/statements/comments on the various transcript pages constitutes a meritorious argument.

7) This Court has undertaken a complete review of the record and considered appellant's submissions. It concludes that appellant's appeal is wholly without merit and devoid of any arguably appealable issues. The Court also is satisfied that Counsel made a conscientious examination of the record and applicable law and properly determined that appellant could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

1) The judgment of CCP is AFFIRMED; and

2) Counsel's motion to withdraw is MOOT.[13]

_____
JUDGE

cc: Prothonotary's Office
    Counsel
    Court of Common Pleas

FILED PROTHONOTARY SUSSEX COUNTY 2019 JUL -9 P 3: 15

---

[13]The Court will not grant counsel's motion to withdraw because it may well be that appellant will want to appeal from this decision. Counsel will need to help with any such appeal if that is the case.

8